### ANDERSON, CLAYTON & CO. et al. v. HENDERSON et al.

### No. 3139.

Court of Civil Appeals of Texas. El Paso. March 14, 1935.

Andrews, Kelley, Kurth & Campbell, of Houston (M. E. Kurth, of Houston, of counsel), for appellants.

Alvin H. Lane, R. G. Scurry, and H. A. Mc-Carley, all of Dallas, for appellees.

PELPHREY, Chief Justice.

Prior to February 23, 1932, Kermit B. Cumpston had invented certain improvements in cotton gins and linters, for which applications for patents were then pending. F. B. Cumpston was the father of Kermit B. Cumpston and had assisted him in perfecting the inventions. On February 23, 1932, Kermit Cumpston, together with Jack A. Schley and J. J. Eckford, of Dallas county, Tex., entered into a contract with J. W. Armstrong and R. F. Henderson in which Armstrong and Henderson were given the exclusive right to manufacture and sell said machines throughout the United States for a period of one year from March 1, 1932. Armstrong and Henderson on their part agreed to, at their own expense, manufacture, advertise, and canvass for the sale of the machines and to pay to Cumpston, Schley, and Eckford a royalty of $5 on each machine sold.

The contract further provided that before the expiration of the year the parties would enter into a license to manufacture and sell the machines for the royalty provided, with such other provisions as were necessary to protect all parties, including a minimum annual royalty, and that Armstrong and Henderson might surrender the rights given them by the contract at any time they might decide

and be relieved of any further contract and agreement to manufacture and sell the machines.

Armstrong and Henderson organized the Cumpston Gin Equipment Company, a partnership, for the purpose of carrying out their part of the contract. The partners were J. W. Armstrong, R. F. Henderson, and Fred Cumpston. The Cumpston Gin Equipment Company placed an exhibit at the Ginner's Convention at Dallas in April, 1932, and J. D. Garnett, L. L. Belk, C. A. Hooten, and I. W. Hoover all attended the convention and viewed the exhibit.

According to the testimony of D. B. Canafax, one of the partners in the firm of Anderson, Clayton & Co., J. D. Garnett owned 44 per cent. of the common stock of the Elk City Cotton Oil Company; L. L. Belk was a service mechanic on round bale presses for Anderson, Clayton & Co.; C. A. Hooten was mechanical supervisor of round bale presses for Anderson, Clayton & Co.; and I. W. Hoover was in no way connected with Anderson, Clayton & Co.

On September 30, 1933, R. F. Henderson, J. W. Armstrong, Quincy Lamar, J. D. Stokes, Jr., Carl Morgan, and William Bryan, as copartners trading and doing business as Cumpston Gin Equipment Company, brought this suit against Fred and Kermit Cumpston, residents of Navarro county, Jack Schley and J. J. Eckford, residents of Dallas county, and Anderson, Clayton & Co., a copartnership having its principal office and place of business in Harris county.

The suit was for damages for an alleged conspiracy between all of the defendants to deprive plaintiffs of their rights under the contract between Kermit Cumpston, J. J. Eckford and Jack Schley, and Armstrong and Henderson.

Anderson, Clayton & Co. and W. L. Clayton individually filed their pleas of privilege to be sued in Harris county. A controverting affidavit was then filed by appellees in which it was alleged that the suit was maintainable in Dallas county because a single joint cause of action was alleged against all of the defendants in their petition; the petition being referred to for a full and complete statement of such cause of action.

Upon hearing, the pleas of privilege were overruled, and Anderson, Clayton & Co. and W. L. Clayton, individually, have appealed.

### Opinion.

Appellant's brief contains eight assignments of error and a like number of propositions. The substance of these is that the evidence is insufficient to overcome the prima facie case arising from the filing of their plea of privilege, and that the pleadings of appellees show the contract alleged to have been breached to be wholly unilateral and therefore unenforceable against Schley and Eckford, the residents of Dallas county.

In connection with the first question appellant asserts that there is no evidence showing that any member of the copartnership of Anderson, Clayton & Co. ever knew of the transactions pleaded by appellees, or that the persons alleged in appellees' pleadings to be representatives of Anderson, Clayton & Co. were ever authorized or had any authority whatsoever from any member of Anderson, Clayton & Co., or any one authorized by them, to participate in any respect in any acts complained of by appellees.

Appellees' brief contains the following statement as to the facts shown by them:

"In support of these allegations, plaintiffs established by the deposition of Mr. D. B. Canafax, a partner in appellant firm, that Mr. L. L. Belk was an employee of said firm described by Mr. Canafax as a service mechanic on round bale presses. Mr. Canafax further testified that Mr. C. A. Hooten was an employee of appellants, and called him 'Mechanical supervisor of round bale presses.' He further testified that Anderson, Clayton & Co. owned all of the preferred and 88.75% of the common stock of Southwest Industries, Inc., which latter company owned the controlling interest in Elk City Cotton Oil Company, and that Elk City Cotton Oil Company owned Elk Manufacturing Company 100%.

"Mr. J. D. Garnett testified that he was President and General Manager of Elk City Cotton Oil Company, and also of Elk Manufacturing Company. Mr. Garnett further testified that I. W. Hoover represented the Abilene Cotton Oil Company, and Mr. Canafax testified that Anderson, Clayton & Company had an indirect interest in the Abilene Company.

"Mr. J. W. Armstrong of plaintiffs testified that Mr. J. D. Garnett looked at plaintiffs' exhibits at the Ginners' Convention, that Mr. L. L. Belk was with Garnett, that Mr. Belk brought Mr. Hooten to the exhibit and that he also brought a man by the name of Hoover, who said he was the agent representing Anderson, Clayton & Company at Abilene, Texas. That all of these men seemed very much interested in plaintiffs' exhibit; that he, Armstrong, requested permission to make a ten-day test in order to exhibit to them the merits

of plaintiffs' machine, and that these four men had discussions as to where they would have the demonstration. That they finally decided to have the demonstration at Elk City, Oklahoma, and that Mr. Garnett would let them know when they were ready for the test. That Mr. Garnett duly notified them and that they sent Fred Cumpston up to get the plans and specifications for the size and kind of machines required for the test. Mr. Armstrong further testified that Mr. Garnett told Armstrong that he had charge of Oklahoma for Anderson, Clayton & Company's interests. Mr. Belk told Armstrong that he was a kind of installment superintendent for the Anderson, Clayton interests. Mr. Hooten told Armstrong that he was working out of the Houston office of Anderson, Clayton & Company. All of these statements appear to have been made while the four agents and representatives of appellants were together.

"In his discussions with Garnett, Belk and Hoover, Mr. Armstrong told them that Cumpston Gin Equipment Company, plaintiff partnership, had a contract covering the manufacture and sale of the inventions under investigation.

"Mr. Cumpston testified that after he quit plaintiffs he went to work for the Elk Cotton Oil Company, and that as a part of that work that he went to Abilene and to Shamrock and installed these saws in both places. Mr. Canafax testified that Anderson, Clayton & Company owned an interest in the Abilene and Shamrock cotton oil companies.

"Mr. Henderson testified that about September 21st Mr. Cumpston 'phoned him from Clinton, Oklahoma, and reported that he was there on Anderson, Clayton & Company's payroll. Henderson further testified that when he went up to Elk City in October, 1932, that he asked Mr. Garnett what Anderson, Clayton & Company's engineers had said about plaintiffs' machinery, and that Garnett replied they had not made him any special report, but that Garnett finally showed him the report made to him by the engineers. Mr. Henderson further testified to a conversation between himself, Mr. Garnett, and Mr. Belk as to when he could make a test for them, in which Mr. Belk stated: 'Our company is interested in anything that will increase the efficiency of our machinery 20%;' and stated further: 'If your gin stand makes the test you won't work for anybody else for a year

and a half.' Henderson further testified that in his talk with Belk and Garnett, Garnett stated: 'My company represents the Anderson, Clayton interests in Oklahoma.'

"The record further shows that about March 30, 1933, Mr. Garnett, on behalf of the Elk Manufacturing Company, took a contract from Cumpston, Eckford and Schley for the manufacture of the device in question, which contract contained among others the following provisions:

"'This license shall not be transferable without the written consent of the licensors, except to organizations which are subsidiaries of the licensee, or of which the licensee is a subsidiary.'"

And upon these they contend that sufficient circumstances are shown to bear out the fact that Garnett was authorized to test out appellees' machinery at Elk City, on behalf of Anderson, Clayton & Co., and that he was acting in the interest of Anderson, Clayton & Co. in all of his dealings with reference thereto.

It further appears that Belk, whom Canafax admits was an employee of Anderson, Clayton & Co., first saw the exhibit at the Dallas Ginner's Convention, that he, thereafter, brought Hooten, another employee to see it; that he also brought Garnett and Hoover, officials of companies in which Anderson, Clayton & Co. owned interests; and that the four, in response to Armstrong's offer of a demonstration, decided that the test should be made at the plant of the Elk City Cotton Oil Company, of which Garnett was president.

These facts connect Garnett with employees of Anderson, Clayton & Co., in the inspection of the exhibit and in the decision as to where the test should be made.

In addition to this, we find that Garnett had a report of Anderson, Clayton & Co.'s engineers as to the inventions in his possession.

■ We have concluded that these facts are sufficient to show, prima facie, that Garnett was acting for Anderson, Clayton & Co. in the negotiations.

■ We are further of the opinion that the evidence shows such a performance on the part of appellees as to preclude the other parties to the contract from urging lack of mutuality as a defense. 10 Tex. Jur. p. 159.

Finding no reversible error, the judgment of the trial court is affirmed.